UNITED STATES, Appellee

v.

Isaac D. ROBERSON, Lance Corporal
U.S. Marine Corps, Appellant

No. 06-0611

Crim. App. No. 200301539

United States Court of Appeals for the Armed Forces

Argued February 13, 2007

Decided May 22, 2007

ERDMANN, J., delivered the opinion of the court, in which
EFFRON, C.J., and BAKER, STUCKY, and RYAN, JJ., joined.

Counsel

For Appellant: Lieutenant W. Scott Stoebner, JAGC, USN
(argued); Captain Rolando Sanchez, USMC (on brief).

For Appellee: Lieutenant Mark H. Herrington, JAGC, USNR
(argued); Colonel Ralph F. Miller, USMC (on brief); Commander
Charles N. Purnell, JAGC, USN, and Lieutenant Jessica M. Hudson,
JAGC, USN (on brief).

Amicus Curiae for Appellant: Jonathan K. Hullihan (law student)
(argued); Monica H. Wallace, Esq. (supervising attorney),
Jonathan Shaver (law student), and Matthew Sonn (law student)
(on brief) – for Loyola University New Orleans College of Law.

Amicus Curiae for Appellee: Lorelie A. Papel (law student)
(argued); Patrick E. O'Keefe, Esq. (supervising attorney) and
Jennifer C. Deasy (law student) (on brief) - for Loyola
University New Orleans College of Law.

Military Judges: T. A. Daly (arraignment) and J. P. Colwell
(trial)

**This opinion is subject to revision before final publication.**

United States v. Roberson, No. 06-0611/MC

Judge ERDMANN delivered the opinion of the court.[1]

Lance Corporal Isaac D. Roberson was convicted at a special court-martial with members of unauthorized absence, larceny and forgery in violation of Articles 86, 121 and 123, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 886, 921, 923 (2000). He was sentenced to a bad-conduct discharge, confinement for one month, forfeiture of $737.00 pay per month for a period of one month, and reduction to the lowest enlisted grade. The convening authority approved the sentence and the United States Navy-Marine Corps Court of Criminal Appeals affirmed the findings and sentence. United States v. Roberson, No. NMCCA 200301539, 2006 LEXIS CCA 60, 2006 WL 650026 (N-M. Ct. Crim. App. Mar. 14, 2006).

We granted review to determine whether the military judge abused his discretion when he excluded testimony offered under Military Rule of Evidence (M.R.E.) 803(3) and whether Roberson's due process right to timely post-trial review and appeal was violated. We conclude that the military judge erred in excluding the proffered evidence, but Roberson was not materially prejudiced by the rulings. We further conclude that

---

[1] Oral argument in this case was hosted by the Loyola University New Orleans College of Law at the U.S. Court of Appeals for the Fifth Circuit, New Orleans, Louisiana, as part of the court's "Project Outreach." See United States v. Mahoney, 58 M.J. 346, 347 n.1 (C.A.A.F. 2003). This practice was developed as part of a public awareness program to demonstrate the operation of a federal court of appeals and the military justice system.

even if we were to assume that Roberson's due process rights to a timely review were violated, the error was harmless beyond a reasonable doubt.

## Issue I

### The M.R.E. 803(3) Evidence[2]

An accused at a court-martial is entitled to present relevant evidence that is not otherwise inadmissible.  M.R.E. 401; M.R.E. 402.  Relevant evidence is that which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  M.R.E. 401.  Roberson contends that the military judge abused his discretion when he prevented Roberson from presenting additional evidence under M.R.E. 803(3) in support of his affirmative defense of duress.  Roberson contends that the erroneous rulings denied him due process and a fair trial.  We conclude that the military judge erred in excluding the contested evidence.  Under the circumstances of this case, however, the error was not of constitutional magnitude and did not materially prejudice Roberson's substantial rights.

---

[2] "[M.R.E.] 803 Hearsay exceptions; availability of declarant immaterial . . . . (3) Then existing mental, emotional, or physical condition."  Manual for Courts-Martial, United States, Analysis of the Military Rules of Evidence app. 22 at A22-53 (2005 ed.).

                              Facts

     Roberson and Dominique Matson agreed that they would steal

several checks from Roberson's roommate, Lance Corporal John A.

Abrenica.  Matson took a number of checks from Abrenica's

checkbook and gave the checks to Roberson.  Roberson forged

Abrenica's signature on one check in the amount of $400.00 and

Matson used Roberson's automated teller machine (ATM) card to

deposit the check into Roberson's savings account.  Later,

Matson used the ATM card to withdraw the money which he split

with Roberson.  Roberson forged a second check for $300.00 and

deposited it into his account, but the check did not clear

because a "stop payment" order had been placed on the stolen

checks.  Roberson executed a pretrial statement admitting to

this misconduct.  The pretrial statement made no mention of

Matson threatening Roberson with bodily harm if Roberson did not

participate in the crimes.

     Abrenica testified on direct examination that after the

incident, Roberson had approached him to apologize and mentioned

something about Matson.  On cross-examination, Abrenica

testified in more detail as to what Roberson had told him:  that

Matson believed Roberson owed him money; that Matson said he

"better get [his] money"; and that Matson held a gun to

Roberson's head to make Roberson "perform certain acts."  A

stipulation of expected testimony of Roberson's half sister

reflected that she had received a phone call in which the caller had threatened to kill Roberson if he told anyone about the stolen checks and that she had related the content of the phone conversation to Roberson. Lance Corporal Carlton P. Revell testified that he overheard a conversation between Roberson and another individual during which the other individual wanted Roberson to deposit a check and produce money. Revell described this conversation as "unfriendly." All of this testimony was admitted by the military judge.

Roberson's defense counsel also sought to introduce testimony from Donnie L. Mathis, a former Marine cook who knew Matson. Mathis would have testified about a conversation he had with Matson in which Matson asserted that Roberson owed Matson money that he would get by any means. The defense also sought to have Mathis testify that he passed this information on to Roberson and that Roberson seemed scared. Mathis would also have testified that Matson had an aggressive personality and that Matson had a handgun. The military judge did not permit Mathis to testify as to any of these matters. Based on evidence that had been admitted, however, the military judge instructed the members on the defense of duress.

## Discussion

"'A military judge's decision to admit or exclude evidence is reviewed under an abuse of discretion standard.'" United

States v. Barnett, 63 M.J. 388, 394 (C.A.A.F. 2006) (quoting United States v. McDonald, 59 M.J. 426, 430 (C.A.A.F. 2004)). In this case we assess the military judge's rulings in light of Rule for Courts-Martial 916(h) which provides for the affirmative defense of duress at trials by courts-martial:

> It is a defense to any offense except killing an innocent person that the accused's participation in the offense was caused by a reasonable apprehension that the accused or another innocent person would be immediately killed or would immediately suffer serious bodily injury if the accused did not commit the act. The apprehension must reasonably continue throughout the commission of the act. If the accused has any reasonable opportunity to avoid committing the act without subjecting the accused or another innocent person to the harm threatened, the defense shall not apply.

The initial testimony at issue concerned Matson's statement to Mathis that Roberson owed Matson money for disposing of some of Matson's drugs and that Matson was "going to get his money back not [sic] matter nothing, if you don't cooperate with him." Defense counsel argued that this statement was offered under M.R.E. 803(3) to show Matson's existing mental state and motive. In excluding the statement, the military judge stated that he did "not believe that these statements demonstrate an attempt or plan or motive on this witness that do not [sic] fall within this hearsay exception."

Military Rule of Evidence 803(3) provides the hearsay exception for statements of "[t]hen existing mental, emotional, or physical condition":

> A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of [the] declarant's will.

See United States v. Palmer, 55 M.J. 205, 207 (C.A.A.F. 2001). Matson's statement could reasonably be construed as reflecting that he was willing to get his money by any necessary means; in other words, that he intended to take such steps as were necessary to facilitate collecting the money. We conclude that the military judge erred when he ruled that the statement by Matson to Mathis did not reflect intent. The military judge's stated reason for excluding the evidence is inconsistent with the facial implication of the words: "going to get his money back not [sic] matter nothing."

In addition, it appears that the military judge did not recognize that the statement could be used to show that the intent was carried out. "[S]uch out-of-court statements which reflect the declarant's state of mind are also admissible to prove that the intent subsequently was carried out. . . . Such factors in this case as the statements' vagueness . . . go only to the weight to be given the evidence and not to its admissibility." United States v. Elliott, 23 M.J. 1, 7 (C.M.A. 1986). Finally, in light of the relatively low standard for

relevance in M.R.E. 401, the statement tends to support a defense of duress as raised through other testimony.

We next consider the testimony offered to show that the foregoing statement was communicated to Roberson by Mathis. Defense counsel sought to have Mathis testify that he told Roberson what Matson had said about coming to get the money. As noted, Matson's statement of intent to get his money by any means was admissible to show intent. In turn, the fact that Matson's expressed intent was conveyed to Roberson is relevant. The communication shows that Roberson was aware of the threat and thus has a tendency to show that there may have been a basis for Roberson to be fearful. In fact, the statement of Matson to Mathis makes little independent contribution to duress unless it can be shown that the statement was conveyed to Roberson. Thus, we conclude that the military judge erred in excluding evidence that Mathis told Roberson about Matson's statement.

Defense counsel also sought to have Mathis testify about his perception of how Roberson reacted to hearing that Matson said he was coming to get the money. According to Mathis, Roberson appeared "shook." The military judge stated, "This witness, again, similar to other witnesses, can't testify to what effect that had on Lance Corporal Roberson." We disagree with the military judge. Military Rule of Evidence 701 provides that a lay witness may express an opinion based upon personal

observation where that opinion is relevant to a fact in issue and not based upon specialized, scientific knowledge.

Mathis's opinion of Roberson's reaction to hearing Matson's statement, based as it was upon personal observation, tends to support a conclusion that Roberson was in fear of Matson. So long as the opinion is based upon personal observation and is relevant, a lay witness may testify about another's emotional state. See Farfaras v. Citizens Bank and Trust of Chicago, 433 F.3d 558, 565-66 (7th Cir. 2006) (lay opinion that another was depressed); Markgraf v. State, 12 P.3d 197, 200 (Alaska Ct. App. 2000) (testimony that another person seemed scared). No unique ability or specialized training is required to form such opinions. We conclude that the military judge abused his discretion in excluding Mathis's opinion of the effect that Matson's statements had upon Roberson.

Matson's statement about getting the money in any way he could and the fact that this statement was conveyed to Roberson were offered in conjunction with Mathis's opinion that Matson was "an aggressive type person. Like trying to strong arm people." In light of the duress defense, this opinion of Matson's character is relevant as an opinion from which the factfinder could reasonably conclude Roberson perceived Matson as a threat. This relevance is not tied to Matson acting in accordance with that characteristic, which would be prohibited

9

under M.R.E. 404(b).  Rather, it goes to the reasonableness of any fear that Roberson may have had in connection to the duress defense.

The last evidence that was excluded was Mathis's testimony that Matson had a "handgun. . . . I saw a .45 he had before." This observation was not offered in conjunction with any evidence showing that Roberson knew Matson had a handgun -- that fact came out through Abrenica's testimony.  Instead, Mathis's testimony about the weapon would have lent support to the duress defense by contributing to the reasonableness of Roberson's fear.  In light of Abrenica's testimony that Roberson said that Matson had a weapon and the military judge's ultimate conclusion that duress had been raised, we conclude that the military judge abused his discretion in omitting Mathis's testimony that Matson in fact had a gun.

Having determined that the military judge abused his discretion by excluding the foregoing testimony from Mathis, we must now consider the effect of that error.  Roberson argues that by excluding this testimony, the military judge deprived him of his opportunity to present a complete defense.  As a result, Roberson argues, the burden shifts to the Government to show that the error was harmless beyond a reasonable doubt. United States v. McAllister, 64 M.J. 248, 251 (C.A.A.F. 2007)

United States v. Roberson, No. 06-0611/MC

(quoting United States v. Buenaventura, 45 M.J. 72, 79 (C.A.A.F. 1996)).

The Government responds that any error in this case is not constitutional and that we should review the effect of any error to determine whether Roberson's substantial rights were materially prejudiced.  Article 59(a), UCMJ, 10 U.S.C. § 859(a) (2000).  We review the prejudicial effect of an erroneous evidentiary ruling de novo.  United States v. Diaz, 45 M.J. 494, 496 (C.A.A.F. 1997).  Because Roberson presented other evidence to establish virtually the same facts in support of a duress defense, we conclude that he was not denied "a meaningful opportunity to present a complete defense."  Holmes v. South Carolina, 126 S. Ct. 1727, 1731 (2006) (citations and quotation marks omitted); California v. Trombetta, 467 U.S. 479, 485 (1984).  Therefore, we test this error for harmlessness under Article 59(a), UCMJ.

"'We evaluate prejudice from an erroneous evidentiary ruling by weighing (1) the strength of the Government's case, (2) the strength of the defense case, (3) the materiality of the evidence in question, and (4) the quality of the evidence in question.'"  United States v. Barnett, 63 M.J. at 397 (quoting United States v. Kerr, 51 M.J. 401, 405 (C.A.A.F. 1999)).  Using this evaluation, we will reverse a case only if we determine that the finder of fact would have been influenced by the

evidence that was erroneously omitted.  United States v. Toohey, 63 M.J. 353, 358 (C.A.A.F. 2006); United States v. Kaiser, 58 M.J. 146, 149 (C.A.A.F. 2003).

Here the Government's case was strong and included the forged checks deposited into Roberson's savings account, testimony of the victim, and Roberson's pretrial statement admitting every element of the pertinent offenses.  The pretrial statement contained no reference to any threats, coercion, intimidation or duress imposed by Matson.  In contrast, the duress defense was markedly less than compelling.  Duress is strictly defined in R.C.M. 916(h) which provides that the accused's participation in the offense must be "caused by a reasonable apprehension that the accused or another innocent person would be immediately killed or would immediately suffer serious bodily injury if the accused did not commit the act. The apprehension must reasonably continue throughout the commission of the act."  Here, nothing in the admitted evidence or the evidence excluded by the military judge indicates that Roberson's apprehension of physical harm continued unabated throughout the course of his criminal conduct or that he did not have some reasonable opportunity to extricate himself from the situation before he committed this series of crimes that continued for more than two weeks.  In addition, Roberson wrote "Merry Xmas" on the first check he forged and "Happy Holidays"

on the second, hardly actions consistent with duress. Although the testimony of Mathis may have been material to the duress defense, it was of no better quality than that which was already before the finder of fact nor would it have strengthened the duress defense by remedying the deficiencies previously noted. We conclude that the erroneous exclusion of Mathis's testimony did not materially prejudice Roberson's substantial rights.

## Issue II

### Appellate Due Process

We granted a second issue in this case to examine whether Roberson was deprived of his right to due process by the 1,524 days that elapsed between his trial and completion of appellate review. We recently addressed a very similar circumstance in United States v. Young, 64 M.J. 404, 408-09 (C.A.A.F. 2007), involving a delay of 1,637 days between trial and completion of review at the United States Army Court of Criminal Appeals. Applying that same analysis and for the same reasons, we conclude that any denial of Roberson's right to speedy post-trial review and appeal was harmless beyond a reasonable doubt and no relief is warranted.

### Decision

The decision of the United States Navy-Marine Corps Court of Criminal Appeals is affirmed.